USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRIUMPH CONSTRUCTION CORP.,

Plaintiff,

-against-

UNITED STATES FIRE INSURANCE COMPANY,

Defendant.

1:22-cv-6440-MKV

**MEMORANDUM OPINION
AND ORDER GRANTING
SUMMARY JUDGMENT FOR
DEFENDANT**

MARY KAY VYSKOCIL, United States District Judge:

Triumph Construction Corp. ("Triumph") and Travelers Indemnity Company ("Travelers") initiated this action against United States Fire Insurance Company ("US Fire") by filing a complaint in state court, which was removed to federal court by US Fire. [ECF No. 1]. Thereafter, US Fire filed a motion to dismiss, [ECF No. 8], which Judge Roman, to whom this matter was initially assigned, denied without prejudice as procedurally defective, [ECF No. 12]. The case was subsequently reassigned to me.

Thereafter, I granted US Fire leave to renew its motion, and directed Triumph and Travelers to advise the Court whether they intended to file an amended complaint. [ECF No. 15].

Triumph and Travelers filed an amended complaint seeking the following declaratory relief in connection with an underlying action against the City of New York (the "City"), *Asdrubal Rodas v. The City of New York* (Sup. Ct. Kings County, Index No. 511143/2019) ("*Rodas*"):

1. [US Fire] must defend and indemnify the City . . . on a primary and non-contributory basis in *Rodas*;

2. [US Fire] must reimburse Travelers for all attorneys' fees, costs, and expenses incurred for the defense of the City . . . in *Rodas* up to and through the date [US Fire] assumes the City['s] . . . defense on a primary and non-contributory basis;

3. [US Fire] must reimburse Triumph for all attorneys' fees, costs, and expenses incurred for the defense of the City . . . in *Rodas* up to and through the date [US Fire] assumes the City['s] . . . defense on a primary and non-contributory basis; and

1

4. For such other and further relief as the Court deems just and proper.

[ECF No. 17] (the "Amended Complaint" or "Am. Compl.").

US Fire moved to dismiss the Amended Complaint. [ECF No. 18]. The Court granted the motion to dismiss with respect to Travelers, and denied it with respect to Triumph. [ECF No. 25] (the Court's "Prior Ruling"). Thereafter, US Fire filed an answer. [ECF No. 26].

After the completion of discovery, *see* [ECF No. 41] (denying request for further extension of discovery), Triumph and US Fire each moved against the other for summary judgment. In support of its motion for summary judgment against US Fire, [ECF No. 42], Triumph submitted a memorandum of law, [ECF No. 45] ("Pl. MSJ"); a declaration signed by Matthew C. Ronan, [ECF No. 43], accompanied by nine exhibits, [ECF Nos. 43-1–9]; a declaration signed by Carol Olsen, [ECF No. 44], accompanied by thirteen exhibits, [ECF Nos. 44-1–13]; and a rule 56.1 statement, [ECF No. 46] ("Pl. 56.1").

In opposition, US Fire submitted a memorandum of law, [ECF No. 56] ("Def. Opp."); and a response to Triumph's Rule 56.1 statement, [ECF No. 57] ("Def. 56.1 Responses"). In reply, Triumph submitted a memorandum of law, [ECF No. 61] ("Pl. Reply"); a declaration signed by Matthew C. Ronan, [ECF No. 59], attaching one exhibit, [ECF No. 59-1]; and a declaration signed by Daniel Sollazzo, [ECF No. 60], attaching one exhibit, [ECF No. 60-1].

US Fire also moved for summary judgment against Triumph. [ECF No. 48]. In support of its motion, US Fire submitted a memorandum of law, [ECF No. 49] ("Def. MSJ"); an affirmation signed by Frank M. Falcone, [ECF No. 50], accompanied by nineteen exhibits, [ECF Nos. 50-1–19]; and a Rule 56.1 statement, [ECF No. 41] ("Def. 56.1").

In opposition, Triumph submitted a memorandum of law, [ECF No. 54] ("Pl. Opp."); a declaration signed by Daniel Sollazzo, [ECF No. 53]; and a response to US Fire's Rule 56.1

2

statement, [ECF No. 55] ("Pl. 56.1 Responses").  In reply, US Fire submitted a memorandum of law, [ECF No. 56] ("Def. Reply").

The cross-motions are now fully briefed and pending before the Court.

## UNDISPUTED MATERIAL FACTS[1]

### I.   The Insurance Policies

US Fire insured Triumph under a "business auto" insurance policy, numbered 133-74407, for the period of August 1, 2018, to August 1, 2019 (the "US Fire Policy").  Def. 56.1 Responses ¶ 1.  Travelers issued a commercial general liability insurance policy, numbered VT1NK-EXGL-4E99538A-IND-18, to Triumph for the same period (the "Travelers Policy").  Def. 56.1 Responses ¶ 6.

The US Fire Policy provides that, "[f]or any covered 'auto' [Triumph] own[s], this Coverage Form provides primary insurance."   [ECF No. 43-7] at 80; *see also* Def. 56.1 Responses ¶ 5 (admitting "that Triumph accurately quotes a portion of the 'Other Insurance' provision of the US Fire Policy," but denying "that this policy provision is material").   The Travelers Policy provides that the Travelers Policy is "excess . . . [i]f the loss arises out of the maintenance or use of . . . 'autos.' "  [ECF No. 44-1] at 119; *see also* Def. 56.1 Responses ¶ 7 (admitting "that Triumph accurately quotes a portion of the 'Other Insurance' provision of the Travelers Policy").

The Travelers Policy also contains a provision for a Self-Insured Retention in the amount of $50,000 (the "SIR"), Pl. 56.1 Responses ¶ 44; *see also* [ECF No. 44-1] at 69, which the Court will elaborate upon as the provision becomes relevant below.

---

[1] Generally, to provide a comprehensive view of the Parties' factual positions, the Court cites herein to the 56.1 Responses, and, where appropriate, to underlying exhibits.

Finally, the US Fire Policy further provides that also included as an "insured" under the US Fire Policy is "[a]ny person, organization, or governmental entity with respect to the operation, maintenance or use of a covered 'auto' if you are required to add such person, organization or governmental entity to this policy as an additional 'insured' in order to comply with the terms of a written contract or written agreement." [ECF No. 43-7] at 33; *see also* Def. 56.1 Responses ¶ 3 (admitting that "Triumph accurately quotes a portion of the 'Blanket Additional Insured When Required Under Written Contract' provision of the US Fire Policy," but denying "that this policy provision is material"). The US Fire Policy additionally provides that "anyone liable for the conduct of an 'insured' . . . but only to the extent of that liability" qualifies as an "insured," [ECF No. 43-7] at 73–74; *see also* Def. 56.1 Responses ¶ 2 (admitting "that the cited page of the US Fire Policy" contains the quoted language, but denying "that this policy provision is material").

The US Fire Policy also contains a "New York Mobile Equipment Endorsement," Def. 56.1 Responses ¶ 4, which provides that "Liability Coverage does not apply to 'bodily injury' . . . resulting from the operation of any machinery or equipment that is on, attached to or part of these vehicles." [ECF No. 43-7] at 218–19 (the "Equipment Endorsement").

## II.    The Underlying Litigation

In 2017, Triumph entered into a contract to perform construction work for the City (the "Project"). *See* Pl. 56.1 Responses ¶ 12; Def. 56.1 Responses ¶ 16. Under that contract, Triumph was required to name the City as an additional insured under the US Fire Policy. Def. 56.1 Responses ¶ 17. Triumph employed an individual named Asdrubal Rodas ("Rodas") in connection with the Project. Def. 56.1 Responses ¶ 9. Rodas alleges that he was injured while working on the Project in 2018 (the "Accident"). Def. 56.1 Responses ¶ 8.

4

The Accident involved a Komatsu WA380 wheel loader (the "Wheel Loader"), Def. 56.1 Responses ¶ 11,[2] that was being driven by a Triumph employee at the time of the Accident. Def. 56.1 Responses ¶ 13.

On May 20, 2019, Rodas sued the City over the Accident. Def. 56.1 Responses ¶ 14; *see Rodas*. The City is the only defendant in *Rodas*. Pl. 56.1 Responses ¶ 26; Pl. 56.1 Responses ¶ 42. Triumph is not a party to *Rodas*. Pl. 56.1 Responses ¶ 27; Pl. 56.1 Responses ¶ 42.

Travelers is defending the City in the *Rodas* case under the Travelers Policy. Pl. 56.1 Responses ¶ 43. Triumph is contractually obligated under the SIR to pay the first $50,000 of the City's defense costs, *id.*, but Travelers has not asked Triumph to pay—and Triumph has not paid—any amount under the SIR. Pl. 56.1 Responses ¶ 44.[3]

## III.    The Insurance Claims

In connection with the Accident, Rodas submitted a Notice of Claim to the City. Pl. 56.1 Responses ¶ 14. The City tendered the Notice of Claim to Triumph and to Triumph's general liability insurer, Travelers, requesting that Triumph "notify any other commercial general liability insurer providing coverage for the [A]ccident." Pl. 56.1 Responses ¶¶ 16, 17 (cleaned up).

---

[2] While the complaint in *Rodas* alleges only that Rodas "was caused to be injured when he was caused to be knocked to the ground by a swinging and inadequately controlled suspended load being transported by a backhoe," [ECF No. 44-11] ¶ 29, a claim notice submitted by Rodas to the City (the "Notice of Claim") alleges more specifically that he "was struck by a large, hoisted metal plate which was being transported by an excavating machine and which was inadequately and improperly secured and controlled," [ECF No. 50-3] at 4; *see also* Pl. 56.1 Responses ¶ 15. The Parties continue to dispute how, exactly, the "metal plate" was connected to the Wheel Loader. Def. 56.1 Responses ¶ 10. As will be discussed further below, any dispute on this issue is immaterial in light of the Court's Prior Ruling. The Parties also dispute the ownership of the Wheel Loader, Def. 56.1 Responses ¶ 12, which is likewise immaterial to the Court's resolution of this case.

[3] This fact was previously contested. Indeed, immediately after Triumph moved for summary judgment, US Fire filed a letter arguing that Triumph had during discovery "obfuscated the status of the SIR" and misrepresented that it had " 'incurred and continues to incur costs in connection with the defense of the City of New York' in the Underlying Action." [ECF No. 47] at 1–2 (quoting the Amended Complaint at ¶ 22). On this basis, Plaintiff requested leave to move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 37(b)(2)(A)(v). Triumph acknowledges that it made a "mistake in responding to an interrogatory by stating that it had incurred and paid $34,251.04 in connection with the claim," because "Triumph had [only] incurred that liability [under the SIR] but not yet paid it." [ECF No. 52] at 2 n.1. Any "mistake" during discovery concerning this now-undisputed fact does not change the Court's analysis of the cross-motions for summary judgment.

5

Triumph notified Travelers and Triumph's general liability excess insurers.   Pl. 56.1 Responses ¶ 18.  On February 12, 2019, Triumph submitted to US Fire a loss notice regarding the Accident (the "Loss Notice").[4]

On March 6, 2019, twenty-two days later, US Fire denied coverage (the "Denial").[5]  Pl. 56.1 Responses ¶ 22.  The Denial specifies that "while the Loader is scheduled on the Policy, the operation of machinery or equipment that is on, attached to, or part of, a land vehicle is considered operation of 'mobile equipment' and not operation of an 'auto.' "  [ECF No. 44-12] at 7.  Triumph did not respond, other than by initiating this lawsuit years later in 2022.  Pl. 56.1 Responses ¶ 30; *see also* Pl. 56.1 Responses ¶ 1.

Once *Rodas* had been filed, the City forwarded the suit to Travelers seeking coverage as an additional insured.  Pl. 56.1 Responses ¶ 28.   Travelers accepted coverage for the City in connection with *Rodas* without any reservation of rights.  Pl. 56.1 Responses ¶ 29 (citing [ECF No. 50-10] ("This letter will confirm that Constitution State Services LLC ('Travelers') agrees to defend and indemnify the City of New York, as an additional insured, on a primary basis . . . ." *Id.* at 2–3.).

---

[4] The Parties quibble over the timing of this submission relative to a conversation between Triumph and Travelers, Pl. 56.1 Responses ¶¶ 20, 21 ("The time in the claim note reflects when the claim note was entered, not necessarily when the conversation [between Triumph and Travelers regarding the Accident] occurred."), and with respect to whether it constituted subjective "aware[ness]," Def. 56.1 Responses ¶ 18.  The Court, having reviewed the Loss Notice itself, *see* [ECF Nos. 43-8, 50-7], deems this fact undisputed "insofar as what is asserted . . . is supported by the evidence in the record and is not controverted with citations to evidence that raises a genuine dispute of material fact." *Satanic Temple, Inc. v. Newsweek Mag. LLC*, 774 F. Supp. 3d 688, 693 n.3 (S.D.N.Y. 2025) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).

[5] The Parties dispute the appropriate reading of the documentary record underlying the Denial.  See Def. 56.1 Responses ¶¶ 19, 21; Pl. 56.1 Responses ¶¶ 23, 24, 38.  To the extent that the Parties "dispute[] the characterization of this evidence, but do[] not dispute its factual basis[,] . . . the Court deems [such] fact[s] admitted." *PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *7 n.11 (S.D.N.Y. Mar. 28, 2023); *see also New York by James v. Red Rose Rescue*, 771 F. Supp. 3d 311, 317 n.3 (S.D.N.Y. 2025) ("Where Defendants identify disputed facts but with semantic objections only . . . , which do not actually challenge the factual substance . . . depicted in the accompanying exhibits, the Court will not consider them as creating disputes of fact.").

Roughly two years after the US Fire Denial, Travelers contacted US Fire to question its coverage position.  Pl. 56.1 Responses ¶ 31.  Shortly thereafter, Travelers sent US Fire an email indicating that Travelers had disclaimed coverage.  Pl. 56.1 Responses ¶ 34.  US Fire responded maintaining its Denial.  *Id.*  About a month later—although Travelers continued, and, indeed, through the date of these motions for summary judgment, still continues, to defend *Rodas*, *see* Pl. 56.1 Responses ¶ 43—Travelers reiterated to US Fire its denial of coverage.  Pl. 56.1 Responses ¶ 35.  The letter indicated that Travelers—not Triumph—was seeking reimbursement from US Fire of defense costs incurred in *Rodas*.  Pl. 56.1 Responses ¶ 45.

US Fire responded with a letter indicating that "subparagraph c of the . . . Equipment Endorsement excludes liability coverage to 'bodily injury' 'resulting from the operation of any machinery or equipment that is on, attached to or part of any of these vehicles.' "  [ECF No. 50-15] at 5.  In response, Travelers asserted that US Fire had waived its right to rely on the Equipment Endorsement.  Pl. 56.1 Response ¶ 39.  US Fire again responded by maintaining the Denial, and the following day Plaintiff and Travelers initiated this action.  Pl. 56.1 Responses ¶ 40–41.

## IV.   This Court's Prior Ruling

In the Court's Prior Ruling, as relevant here, the Court held three things.[6]  First, the Court held that the claim in *Rodas* "is precisely the type of claim barred by the Equipment Endorsement, which excludes coverage for 'bodily injury . . . result[ing] from the operation of any machinery or equipment that is on, attached to or part of any of [the insured] vehicles.' "  [ECF No. 25] at 4

---

[6] "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir.1991); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").  Here, there exist no "cogent or compelling reasons to deviate" from the Court's Prior Ruling,  *Uccio*, 940 F.2d at 758 (quotations omitted); *see also Cobalt Multifamily Invs. I, LLC v. Arden*, 46 F. Supp. 3d 357, 360 (S.D.N.Y. 2014), nor has the Court been asked to do so.

(alterations original, quoting the Equipment Endorsement, [ECF No. 24-16] at 69).  As a result, "the U.S. Fire Policy provides no coverage."  [ECF No. 25] at 5.

Second, the Court held that, nevertheless, US Fire in its Denial "may not have informed Triumph of the applicability of the Equipment Endorsement with a high degree of specificity, as required under New York law," thus waiving its ability to rely upon that provision in denying coverage.  *Id.* at 7 (quotations omitted, applying N.Y. Ins. Law § 3420(d)(2)).  "Accordingly, the claims asserted by Plaintiff Triumph [were permitted to] proceed."  [ECF No. 25] at 7.

Third, the Court held that "U.S. Fire's purported failure to comply with Section 3420(d) [was] entirely irrelevant with respect to Plaintiff Travelers, because Section 3420(d) does not apply to claims between insurers."  *Id.* at 6 (quotation omitted).  As a result, Travelers' claims against US Fire were dismissed.  *Id.* at 11.

## V.    The Pending Cross-Motions for Summary Judgment

Triumph and US Fire now cross-move for summary judgment with respect to the obligations of US Fire in connection with the *Rodas* suit.

Specifically, Triumph seeks:

an order declaring that (1) US Fire must defend and indemnify [the City] on a basis that is primary to Travelers, (2) US Fire must reimburse all attorneys' fees, costs, and expenses incurred in the defense of [the City] in in [*Rodas*] up to and through the date US Fire assumes [the City's] defense on a primary basis, and (3) granting such other and further relief as the Court deems just and appropriate.

Pl. MSJ at 12.

US Fire, for its part, seeks dismissal of this action on the following bases:

First, US Fire's Disclaimer adequately explains why the US Fire Policy does not provide coverage in connection with [*Rodas*], and Triumph's corporate representative's testimony confirms that Triumph understood the basis for US Fire's coverage position.

Further, Triumph cannot satisfy its burden of proving that it has standing to seek a declaration as to US Fire's alleged coverage obligations to the City . . . . This is

8

because Triumph is not a party to [*Rodas*], has not incurred any costs on behalf of the City . . ., and any potential future injury to Triumph would be speculative, at best. As such, Triumph's claims against US Fire should be dismissed with prejudice.

Def. MSJ at 9.[7]

## **LEGAL STANDARD**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The Court's role on a motion for summary judgment is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "may not make credibility determinations or weigh the evidence." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). In ruling on summary judgment, the Court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.* If there is evidence in the record that supports a reasonable inference in favor of the opposing party, summary judgment is improper. *See Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 64 (2d Cir. 2021).

When confronted with cross-motions for summary judgment, "the [C]ourt must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable

---

[7] Defendants apparently overlook the reality that "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (collecting cases).

inferences against the party whose motion is under consideration." *Dish Network Corp. v. Ace American Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486–87 (2d Cir. 2014) ("When both sides have moved for summary judgment, the court must apply the [summary judgment] principles to each motion separately.  On each motion it must view the evidence in the light most favorable to the party against whom summary judgment is sought.").

Where an issue of standing is raised at the summary judgment stage, a "plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotations and citation omitted).  Moreover, "a district court must generally . . . establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits." *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)).

## ANALYSIS

US Fire's motion for summary judgment focuses in large part on the existence of an Article III case or controversy, framed both in terms of standing and of ripeness.  *See* Def. MSJ at 15–20; *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ("Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing.").  Naturally, "[d]efendants may . . . test . . . standing as the litigation progresses . . . by challenging . . . standing on summary judgment or even at trial." *Baur v. Veneman*, 352 F.3d 625,

642 (2d Cir. 2003). Indeed, here, the existence of a justiciable case or controversy did not crystalize as an issue until after the Prior Ruling dismissed Travelers from this action.

Because the Prior Ruling altered the nature of the declaratory relief sought in this action in a way material to assessing the existence of a case or controversy, the Court briefly addresses the posture and scope of whatever case or controversy might remain. In so doing, cognizant of the reality that "standing and merits questions frequently overlap," *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 220 (S.D.N.Y. 2016) (quotation omitted), the Court is careful not to exceed the margin of "leeway" that it retains in adhering to the general principle "that Article III standing must be decided before the merits," *Pyramid Crossgates*, 436 F.3d at 87–88.

## I.   Posture and Scope of Any Remaining Case or Controversy

As noted, the Court in its Prior Ruling clearly held that the plain terms of the Equipment Endorsement compel the conclusion that US Fire does not have any coverage obligations with regard to *Rodas* or the claims asserted therein. [ECF No. 25] at 5. To restate the conclusion once more: "[T]he U.S. Fire Policy provides no coverage." [ECF No. 25] at 5. And, Travelers, which provides general liability coverage to Triumph and undertook the defense of the City when it received the *Rodas* suit, Pl. 56.1 Responses ¶ 28–29, continues to defend the City in *Rodas*. Pl. 56.1 Response ¶ 43. Triumph does not argue that the Travelers Policy excludes coverage, but rather that the US Fire Policy provides primary coverage to which the Travelers coverage is excess. *Cf.* Pl. Opp. at 7 (noting that "the Travelers [P]olicy will take over" after "the US Fire [P]olicy limit is exhausted," assuming the Court holds that the latter is primary).

The Court, at the motion to dismiss stage, left open the possibility that the policyholder, Triumph, who, unlike Travelers, is not an insurer, "may not have [been] informed . . . of the applicability of the [New York Mobile] Equipment Endorsement with a high degree of specificity,

11

as required under New York law." [ECF No. 25] at 7 (quotations omitted, applying N.Y. Ins. Law § 3420(d)(2)).

On the record now before the Court at this stage of the litigation, after substantial discovery, that possibility appears to have been a rather slim one, given the similarity of the language in the Denial to the language in the Equipment endorsement. *Compare* the Denial, [ECF No. 44-12] at 7 ("[W]hile the Loader is scheduled on the Policy, the operation of machinery or equipment that is on, attached to, or part of, a land vehicle is considered operation of 'mobile equipment' and not operation of an 'auto.' ") *with* the Equipment Endorsement, [ECF No. 43-7] at 218–19 ("Liability Coverage does not apply to 'bodily injury' . . . resulting from the operation of any machinery or equipment that is on, attached to or part of these vehicles."); *see also* Def. Reply at 2–3 (arguing that "[t]here is no support for Triumph's argument that the Disclaimer is ineffective because the Equipment Endorsement was not quoted verbatim," and, citing the Prior Ruling at 4, that "US Fire's Disclaimer explained that coverage is not afforded based on language nearly identical to the language cited by the Court").

The Court notes that Triumph's challenge in the pending motion for summary judgment to the effectiveness of the Denial is not exactly being mounted by Triumph as an insured seeking coverage. *See Realm Nat. Ins. Co. v. Hermitage Ins. Co.*, 8 A.D.3d 110, 111, 778 N.Y.S.2d 492, 493–94 (1st Dep't 2004) ("The disclaimer was not rendered ineffective by defendant's quotation of only part of the relevant exclusion, especially since the claim of ineffectiveness is being raised not by the insured but by a coinsurer seeking contribution." (citation omitted)). Instead, based on circumstances discussed below, it seems that Triumph seeks to use Section 3420 as a "technical trap," *Tower Ins. Co. of New York v. United Founders Ltd.*, 126 A.D.3d 467, 467, 5 N.Y.S.3d 396,

397 (1st Dep't 2015), to relieve Travelers of the coverage obligation it undertook and to allow Triumph to avoid its inchoate SIR obligations under the Travelers Policy.

Accordingly, this case is somewhat the inverse of one in which one "insurer [seeks to] assert against [another] insurer a [Section 3420] defense it would not have against [the insurers' mutual] insured." *Tech. Ins. Co., Inc. v. Philadelphia Indem. Ins. Co.*, 642 F. Supp. 3d 445, 475 (S.D.N.Y. 2022); *see also George Campbell Painting v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 92 A.D.3d 104, 118, 937 N.Y.S.2d 164, 176 (1st Dep't 2012) (acknowledging, while finding inapplicable to the record under review, the reasoning that "[i]f the settlement has been fully paid by insurers—leaving the insureds with no actual interest in the case and making . . . the other excess insurer, the real party in interest—the argument that [the defendant's] disclaimer was invalid under Insurance Law § 3420(d) would be unavailing, since the protections of . . . § 3420(d) [are] inapplicable to one insurer's claim for reimbursement from another insurer." (quotation and citations omitted)).

Nevertheless, it is clear that the Denial "does not quote, cite, or discuss any exclusion in the US Fire [P]olicy . . . [except for] a boilerplate . . . reservation of the right to rely on any exclusion that might apply," instead referring only "to the US Fire [P]olicy's insuring agreement and definitions." Pl. Reply at 6. This is legally significant to the effectiveness of US Fire's reservation of its right to subsequently disclaim coverage based on the Equipment Exclusion. *See Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 664 (2d Cir. 2013) ("Accordingly, even where disclaimer letters have misquoted or partially omitted the language of an exclusion in a policy, New York courts have held that the disclaimer remains valid *as long as it identified the applicable policy exclusion* and set forth the factual basis for the insurer's position that the claim fell within

13

a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose." (quotation omitted, emphasis added)).[8]

As matters stand, then, the Equipment Endorsement by its terms excludes coverage under the US Fire Policy for *Rodas*.  Travelers, which is defending the City in *Rodas*, is estopped from asserting otherwise.  Triumph, which is not a party to *Rodas* and has in no way contributed towards the defense of that action, may seek to assert otherwise, but only to the extent that the Denial provided ineffective notice and Triumph has suffered injury as a result.  *See City of New Haven v. Ins. Co. of the State of Pennsylvania*, 510 F. App'x 70, 72 (2d Cir. 2013) (summary order) ("[E]ven if the estate and conservator of the officers in question could claim coverage in their own right under the Policy, neither employee is a party to this action, and New Haven does not demonstrate (or even contend) that it has standing as a third party to assert claims on their behalf.").

## II.    Standing

In recognizing the possibility that notice might not have been sufficient with respect to Triumph, the Court did not, however, give Triumph *carte blanche* to exploit that possibility on Travelers behalf.  Put differently, Triumph does not have standing to use this Court to force US Fire to relieve ***Travelers*** of its burden to defend and indemnify the City in *Rodas*.

To begin with, as an illustrative matter, the Court notes that the City itself could probably not seek such relief, because the City is receiving a defense in *Rodas*.  *See* 10 Fed. Proc., L. Ed. § 23:38 ("[I]f one of the plaintiff's insurers has already assumed responsibility for the underlying tort litigation, there is no remaining case or controversy to support a declaratory judgment suit by

---

[8] The Court observes that it is somewhat puzzling that US Fire has declined to argue that the policy language cited in the Denial itself precludes coverage, *see* Def. Reply at 3, given that "[d]isclaimer is considered unnecessary when a claim falls outside the scope of a policy's definition of coverage" lest a court "create coverage where it never existed." *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 409 (S.D.N.Y. 2015) (quoting *Britt v. Gen. Star Indem. Co.*, 494 Fed. Appx. 151, 153 (2d Cir. 2012)); Pl. Opp. at 4 ("US Fire could just rely on the policy provisions referenced in the March 6, 2019 disclaimer letter, thereby removing Insurance Law § 3420(d) from the picture[.]").

the insured against another insurer."). Indeed, under this Court's Prior Ruling, Travelers, which is voluntarily defending the City in *Rodas*, is estopped from arguing that US Fire must assume that defense—meaning that, as concerns Travelers obligations, at least, "there is simply no identifiable dispute." *U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp.*, 321 F. Supp. 3d 313, 320 (E.D.N.Y. 2018); *see also* Pl. 56.1 Responses ¶ 29 (admitting that "Travelers accepted coverage for the City of New York in [*Rodas*] without reserving its rights to deny coverage"). The same will hold true—if and when "liability has been imposed upon" the City, *id.* at 318—with respect to Travelers' indemnification obligations. In other words, Travelers' claims against US Fire have been dismissed with prejudice, [ECF No. 25] at 11, and the City is not injured or in any way adversely affected by that ruling.

Triumph claims to be injured, but Triumph does not itself "seek coverage under [any] policy," nor is it even "being sued in the personal injury action that is the subject of this disclaimer suit." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004) (affirming dismissal of complaint as to such defendants), *certified question accepted*, 2 N.Y.3d 787, 812 N.E.2d 1259 (2004), *and certified question answered*, 3 N.Y.3d 592, 822 N.E.2d 777 (2004). Instead, the sole case or controversy Triumph has identified concerning its own interests is its contractual obligation to pay $50,000 under the SIR in the Travelers Policy. *See* Pl. Opp. at 8 ("US Fire's argument that Triumph has no standing to seek coverage under the US Fire policy because it is not a defendant in the underlying action . . . fails because Triumph is obligated to pay the first $50,000 in defense costs and indemnification covered by the Travelers policy regardless of whether Triumph is a defendant in the underlying action.").[9]

---

[9] Plaintiff's argument that this determination divests the Court of diversity jurisdiction, *see* Pl. Opp. at 8, is wrong. Though neither party cites the applicable line of cases, it is clear that, "[g]enerally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on

The SIR provides, as most relevant here, that Travelers

> will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies, but only to the extent that the amount of such damages exceeds the applicable self-insured retention [of $50,000].  [Travelers] will have the right, but not the duty, to defend the insured against any 'suit' seeking those damages.
>
> . . .
>
> If [Travelers] choose[s] to investigate any 'occurrence' or to defend the insured against any 'suit' on any basis other than as 'your [third-party administrator ("TPA")],' [Travelers] will pay all expenses [it] incur[s] for any such investigation or defense.  Such expenses are not subject to any self-insured retention and will not reduce the limits of insurance.

[ECF No. 44-1] at 69.

The Court puts aside the factually disputed question of whether Travelers' defense of the City in *Rodas* is a defense on some basis other than as the TPA of the insured, *see, e.g.*, Def. Opp. at 9; Def. Reply at 7; Pl. Reply at 1–2; Pl. 56.1 Responses ¶ 37, as well as the apparently unasked question of whether the SIR even applies where it is the City being provided coverage under the Travelers Policy.  *See American Eur. Ins. Co. v. Eire Concrete Inc.*, No. 23-cv-3918 (LJL), 2025 WL 268095, at *8 (S.D.N.Y. Jan. 22, 2025) ("[T]he phrase 'the insured' refers to the party seeking coverage.").[10]  Instead, the Court turns to the more fundamental question of its jurisdiction to resolve Triumph's claims.

"A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction," which "exists only if there is an "actual controversy." *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001) (citing, *inter alia*, 28 U.S.C. § 2201(a) (the "Declaratory Judgment Act") and Article III, Section 2 of the United States Constitution); *see*

---

post-filing events," such that the Court would err "to consider[] a post-filing event in its calculation of the amount in controversy."  *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005).

[10] US Fire cites *Eire Concrete*, 2025 WL 268095, only in connection with an argument about which Policy is primary. Def. Opp. at 18–19.

*also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937))).  Moreover, "an actual controversy must exist at all stages of review, not just when the complaint is filed." *Alvarez v. Smith*, 558 U.S. 87, 87 (2009) (citation omitted).

"[T]he doctrine of standing" is a "landmark[]" that "set[s] apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III." *Lujan*, 504 U.S. at 560 (1992); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.  The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood.").

Standing to sue is "demonstrated by showing (1) that [a plaintiff] has suffered an injury in fact, which is (2) fairly traceable to the challenged action of the defendant, and (3) likely to be redressed by a favorable decision." *360Heros, Inc. v. Mainstreet Am. Assurance Co.*, 816 F. App'x 555, 558 (2d Cir. 2020) (cleaned up, quotation omitted).  "Where, as here, plaintiffs seek . . . declaratory relief, they" must allege a "threatened injury [that] is certainly impending, or [that] there is a substantial risk that the harm will occur." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021).[11]

In assessing the ripeness of a justiciable case or controversy in the context of a declaratory judgment action, "where liability is contingent, courts in this circuit traditionally examine the

---

[11] Defendant's argument that "the mere risk of future harm . . . is insufficient to establish standing in a suit **for damages**," *see* Def. MSJ at 19 (quoting *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153 (S.D.N.Y. Sept. 10, 2021) (emphasis added, internal quotation omitted)), is accordingly inapposite.  Moreover, the Parties' "citation to New York state law cases on the issue of justiciability is similarly irrelevant." *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 512 n.5 (S.D.N.Y. 2018).

'practical likelihood' that there will be some type of settlement or judgment against the insurer." *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 511 (S.D.N.Y. 2018) (quoting *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010) (citing *Emp'rs. Ins. v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 278 (2d Cir. 2008); *E.R. Squibb*, 241 F.3d at 177; *Penn Mut. Life Ins. Co. v. Wolk*, No. 09 Civ. 1808 (SAS), 739 F. Supp. 2d 387, 392 (S.D.N.Y. June 28, 2010)).

It is undisputed that Triumph has not yet paid, or even been asked by Travelers to pay, any amount under the SIR.  Pl. 56.1 Responses ¶ 44.  Travelers accepted coverage for the City almost seven years ago, Pl. 56.1 Responses ¶ 29, and this coverage litigation has been pending since 2022. However, in addition to noting that Travelers is "a for-profit insurance company" that is unlikely to "give Triumph a $50,000 gift by declining to enforce the SIR,"  Pl. Reply at 2 n.2, Triumph has also submitted a declaration signed by Daniel Sollazzo, a "claims professional for Travelers," indicating that "Travelers has not waived and will not waive Triumph's obligation to pay the $50,000 SIR with respect to the underlying Rodas action," but instead "will ensure that Triumph pays its SIR, as Travelers does with all claims involving its policy issued to Triumph."  [ECF No. 53] ¶¶ 1, 4.  In arguing that Triumph lacks standing to sue, US Fire largely ignores that declaration. *Cf.* Def. Reply at 7, 8 (citing [ECF No. 53], but not directly disputing the central assertion that Travelers does intend to enforce the SIR).

Particularly because the Court is obligated to draw all reasonable inferences in Triumph's favor when considering the motion against it, that declaration alone makes it "reasonable to predict" that it is "practical[ly] likel[y]" that Triumph will at some point have to pay something under the SIR,  *E.R. Squibb*, 241 F.3d at 177–78, such that "there is a substantial risk" of loss to Triumph, *Dorce*, 2 F.4th at 95.  *See 360Heros*, 816 F. App'x at 559 ("Accordingly, because a live controversy exists between MSA and 360Heros over fulfillment of the Policy, and because

18

360Heros alleges a continuing stake in the outcome of the controversy with respect to unpaid fees and expenses, the district court erred in dismissing the action for lack of subject matter jurisdiction."). Nevertheless, any such obligation is not at this juncture "imminent or *certainly* impending." *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 47 (2d Cir. 2017), *as amended* (Aug. 2, 2017) (emphasis original, quotation omitted).

Moreover, if and when Travelers decides to assert whatever rights it might have under the SIR against Triumph, that decision will not inflict an "injury" so much as it will reflect a legitimate contractual obligation. Put in terms of standing, Travelers' eventual decision to enforce the SIR, whenever it does so, will be neither fairly traceable to any conduct by US Fire, nor redressable by an order of this Court in this case. *See Lujan*, 504 U.S. at 562 ("When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*, . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." (emphasis original, citations omitted)).

In other words, US Fire's action in declining to take over from Travelers coverage obligations with respect to the City does not have a "determinative or coercive effect upon [Travelers'] action" in eventually enforcing the SIR. *La Raza*, 283 F. App'x at 851 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). That is Travelers prerogative under its agreement with Triumph. To strip Travelers of that prerogative in the case now presented to the Court—in which Triumph does not even seek relief specific to itself, let alone with regard to the SIR, *see* Pl. MSJ at 12—would require the Court to undo its Prior Ruling and rewrite the arrangement of rights and obligations that exists among Travelers, the City, and US Fire, two of which are not even

parties to this litigation. Accordingly, Triumph's potential liabilities under the SIR amount to a theoretical $50,000 contractual question that is not properly before this Court.

Triumph's argument that "US Fire's refusal to provide coverage for the claim implicates the loss of $1 million in coverage under the US Fire Policy as well as the complete cost of defending the underlying action," Pl. Opp. at 5, thrice-over misses the mark, but does underscore the standing problem. First, US Fire's "refusal" to cover the City in *Rodas* has been endorsed by this Court, at least insofar as Travelers' obligation to do so is concerned. *See* [ECF No. 25] at 5 ("[T]he U.S. Fire Policy provides no coverage."). Second, the rights of the City—the additional insured actually in need of, and indeed already receiving, coverage in *Rodas*—are utterly unimpaired; and likewise unimpaired are the rights of Triumph, which is not named in *Rodas*, but through whose policies the City is receiving coverage from Travelers. *See Reichhold Chemicals, Inc. v. Travelers Ins. Co.*, 549 F. Supp. 197, 199–200 (E.D. Mich. 1982) ("[W]here one insurer has assumed responsibility for [*Rodas*], the Court cannot conclude that an actual controversy exists between [the insured] and [another insurer]."). And, finally, Triumph does not have standing to manufacture a case or controversy regarding the rights and obligations of "third part[ies] not before the [C]ourt." *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560); *see also* Pl. MSJ at 12 (seeking declaratory judgment regarding the obligations of US Fire to the City in connection with *Rodas*), under the guise of seeking to avoid any SIR obligations it admittedly may have under the contractually applicable Policy.

In reaching this conclusion, the Court has carefully considered several relevant and helpful cases from within this Circuit cited by neither Party. *See City of New Haven*, 510 F. App'x 70; *Incinia Contracting, Inc. v. Evanston Ins. Co.*, 806 F. Supp. 3d 372 (S.D.N.Y. 2025); *The Vill. of Piermont v. American Alternative Ins. Corp.*, 151 F. Supp. 3d 438 (S.D.N.Y. 2015).

20

In *City of New Haven*, the Second Circuit affirmed a grant of summary judgment in favor of the defendant insurer on an action by New Haven seeking a declaration that New Haven's excess liability policy with the defendant insurer covered claims against New Haven brought in an underlying litigation by two New Haven police officers concerning an automobile accident involving those two officers.  510 F. App'x at 71.  The defendant insurer had denied coverage by invoking an exclusion of bodily injury claims asserted by New Haven's employees.  *Id.* at 71–72.  As relevant here, New Haven argued that, "because its employees, who [were] additional insureds under the [excess liability policy], would [have] be[en] entitled to claim coverage in their own right [under that policy] despite the apparent bar of the [relevant exclusion], New Haven itself [was] entitled to bring [the] action on their behalf."  *Id.* at 72 (citation omitted).  The Second Circuit rejected that argument, holding that, "even if the . . . officers in question could [have] claim[ed] coverage in their own right under the [excess liability policy], neither employee [was] a party to th[e] action, and New Haven [had] not demonstrate[d] (or even contend[ed]) that it ha[d] standing as a third party to assert claims on their behalf."  *Id.*

This case, while somewhat more convoluted, is, in principle, like *New Haven*.  Triumph seeks to assert claims on behalf of entities not before this Court—Travelers and the City—who could not assert those claims themselves, in a manner that might relieve Triumph of its own potential contractual obligations under the SIR in the Travelers Policy.  It is true that, in *City of New Haven*, "the legal right to bring a claim under the excess policy [in spite of the exclusion] belonged to the officers, not to New Haven," *Piermont*, 151 F. Supp. 3d at 446 (citing *City of New Haven v. Ins. Co. of Pennsylvania*, No. 3:10 Civ. 02047 (JCH), 2012 WL 774987  (D. Conn. Mar. 8, 2012), *aff'd sub nom. City of New Haven*, 510 F. App'x 70), whereas, in this case, it is Triumph who, technically, may assert that US Fire waived its right to rely upon the Equipment Endorsement.

21

That does not, however, amount to a license to "get around," *Piermont*, 151 F. Supp. 3d at 446 (describing and distinguishing *City of New Haven*), the terms of the US Fire and Travelers Policies and this Court's Prior Ruling.

In short, this is not a case in which, "[a]s a result" of a "breach of the [applicable] policy" by US Fire, Triumph "experienced financial loss in providing a defense to" the City. *Piermont*, 151 F. Supp. 3d at 445. The possible "financial loss" represented by Triumph's independent SIR "obligation" was in no way "caused" by any "failure [by US Fire] to pay for [the] defense" of the City in *Rodas*. *Id.* at 446. Rather, the Court's Prior Ruling settled any question as to the arrangement of obligations as between Triumph and Travelers with respect to the City, and the only potential harm to Triumph arises from its own contract with Travelers.

The Court notes in particular that *Incinia*, while both sensible and helpful as persuasive authority, was decided on a set of allegations materially different from the undisputed facts presented here. The Court acknowledges the wholly unobjectionable proposition that "actions by parties seeking a declaratory judgment that an insurer must defend and indemnify a third party" do not categorically fail for lack of standing. *Incinia*, 806 F. Supp. 3d at 378. Nevertheless, not every such action involves a plaintiff "suing to enforce its contractual rights on behalf of itself." *Id.* at 379.

In *Incinia*, a policyholder sued its insurer for a declaration that the insurer was obligated under the applicable policy to cover certain additional insureds in an underlying litigation. *Id.* at 376. Unlike in this case, however, the insured plaintiff in *Incinia* was being sued by the additional insureds in the underlying litigation—for, *inter alia*, breach of duties to provide insurance, defend, and indemnify—as a direct result of the insurer defendant's refusal to provide coverage under the applicable policy. *Id.* at 375–76. As such, as a result of the insurer's allegedly wrongful coverage

declination, the policyholder faced a risk of financial liability to the additional insureds, who were suing the insured in connection with the policy. Here, by contrast, the City is receiving coverage as an additional insured under Triumph's policy with Travelers, and Triumph, which is not a party to *Rodas*, faces no liability in connection with that action unless and until Travelers elects to enforce its purported contractual right to collect the SIR.

To allow Triumph to litigate the SIR issue, at this stage of this case, by seeking a declaration that US Fire is obligated to assume coverage for the City from Travelers would be to sanction an "end run." *Incinia*, 806 F. Supp. 3d at 379 (distinguishing *City of New Haven*)). "In [maintaining] th[is] action on [Travelers'] behalf, [Triumph] effectively [seeks] to get around the [Equipment Endorsement] exclusion[]" in a way that Travelers could not, *Piermont*, 151 F. Supp. 3d at 446 (describing and distinguishing *City of New Haven*), toggling from one contract to another in order to avoid a potential $50,000 SIR liability.

In other words, with respect to Triumph, this case is all about the SIR. But the SIR remains a potential liability, not one that is "imminent or ***certainly*** impending." *MGM Resorts*, 861 F.3d at 47 (emphasis original, quotation omitted). Moreover, it is a purely contractual obligation owed to Travelers, which, when it was a party to this litigation, was on the same side of the "v." as Triumph. That obligation was not caused by US Fire, nor is it redressable by this Court in this case. *See Lujan*, 504 U.S. at 562. At best, then, Triumph's insistence on litigating the SIR issue here and now is an attempt to manufacture standing in order to provide relief to Travelers that Travelers can no longer seek for itself.

For similar reasons, even if the Court had jurisdiction to decide this declaratory judgment action, it would decline, on the record before it at this stage, to do so. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023). The "declaratory judgment sought"

would not "serve a useful purpose in clarifying or settling the legal issues involved." *Id.* (cleaned up). Instead, it would threaten to entirely upend the obligations settled in the Prior Ruling as between the City, Travelers, and US Fire. Nor, for the same reason, would it "finalize the controversy and offer relief from uncertainty." *Id.* at 100.

While it does not seem that the "proposed remedy is being used merely for procedural fencing or a race to res judicata," *id.*, it does seem that Triumph's attempt to parlay the Prior Ruling into relief for Travelers would, if countenanced, amount to a *coup d'état* of gamesmanship. There is no apparent risk of "increase[d] friction between sovereign legal systems or improper[] encroach[ment] on the domain of a state or foreign court," *id.*, and no "better or more effective remedy," *id.*, immediately suggests itself. Rather, given the Court's Prior Ruling, "judicial efficiency [and] juridical economy favor declining to exercise jurisdiction." *Id.* (quotations omitted).

## CONCLUSION

For the foregoing reasons, Triumph's motion for summary judgment is DENIED, US Fire's motion for summary judgment is GRANTED, and Triumph's claims are DISMISSED without prejudice for lack of standing. The Clerk of Court is respectfully requested to terminate all outstanding docket entries and to close this case.


**SO ORDERED.**

**Date:  March 6, 2026**               **MARY KAY VYSKOCIL**
      **New York, NY**                 **United States District Judge**

24